Dr. Isaacs
3553 West Chester Pike Unit #177
Newtown Square, PA 19073
Telephone: (212) 257-0737
Email: jdi@alum.dartmouth.org

FILED
JAN 02 2014
CLERK, U.S. DISTRICT COURT
WESTERN DISTRICT OF TEXAS
BY _____
DEPUTY CLERK

SA14MC0012XR

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF WESTERN TEXAS

(ancillary motion)

|  |  |
|---|---|
| DOCTOR J. D. ISAACS | ) |
| Plaintiff, *pro se*, | ) Case No. CV-12-40-LM (NHD) |
| -V- | ) |
| DARTMOUTH HITCHCOCK MEDICAL CENTER; | ) **NOTICE OF MOTION AND** |
| DOCTOR CHRISTINE FINN; | ) **MOTION TO ENFORCE** |
| MARY HITCHCOCK MEMORIAL HOSPITAL; | ) **SUBPOENA DUCES TECUM** |
| TRUSTEES OF DARTMOUTH COLLEGE; | ) |
| and JOHN DOE, | ) |
| Defendants. | ) Date: |
|  | ) Room: |
|  | ) Judge: |
|  | ) Time: |

**NOTICE OF MOTION**

Plaintiff hereby notifies all parties of this motion pursuant to Rule 45(c)(2)(B) of the Federal Rules of Civil Procedure. This motion seeks to compel production of critical PACER meta-data to support claims in two federal lawsuits (NHD CV-12-40-JL & PAED 13-5708-PBT), as well as criminal complaints made to the FBI. The subpoena at issue is hereby attached as Exhibit A. The PACER Service Center has objected to producing the documents, and their objection is attached as Exhibit B. Pursuant to this Court's local rules, the Plaintiff has attempted to confer about this matter with the designated individuals at PACER who have objected to comply with the subpoena issued by this Honorable Court. Curiously, PACER also refused to merely produce a "negative" answer simply declaring that no academic institutions reviewed the relevant PACER data in 2010-2011. There is no imaginable privilege to allow PACER to refuse to making such a declaration. As such, one can only deduce that PACER has improperly taken sides on this lawsuit and refused to produce evidence in their possession of a crime against the Plaintiff.

**MOTION TO ENFORCE SUBPOENA DUCES TECUM**

**I. Background**

In 2006, Plaintiff filed a *pro se* lawsuit against a medical school for improper retaliation and IIED which resulted in his two-month hospitalization. The Plaintiff recovered and performed at the top nationally – above the average neurosurgeon – on the medical boards. Exhibit C is Plaintiff's 2010 photo ID card from medical student clerkships he excelled at with the Cleveland Clinic's orthopedic and spinal surgery department. Upon graduating, Plaintiff received two jobs as a resident physician intern, and was abused by his directors who took an obsessive interest in his prior 2006 lawsuit. The abuse left Plaintiff unable to function at any level comparable to how he did as an honors medical student. Exhibit D pictures a deteriorated Plaintiff after two years of being 90% bedridden and unable to care for many aspects of his health and well-being.

JDIsaacs v. DHMC
Case No. 12-CV-40-JL

The aforementioned litigation initially concerned complications of a traumatic brain injury suffered by the Plaintiff in 1997. The brain injury caused Plaintiff near-total incapacitation for several months from October 1997 – January 1998, followed by chronic concentration and brain impairment concerns. Plaintiff enrolled in medical school in 2005 in California, and resumed a trial of medication for concentration impairment first prescribed in 1998. During this period, Plaintiff became hypomanic, it is believed from the medication, and was dismissed from the medical school. Plaintiff filed a complaint (USDC CACD 06-3338-GAF) alleging improper retaliation, which settled with the sealing of and the acquittal of the adverse disciplinary records.

The Plaintiff proceeded to enroll in a Caribbean medical school, from which he graduated without incident in 2010. He managed to rank in the top decile of American physicians on the United States Medical Licensing Exam 1, and received generally honors-level clinical reviews for his entire four years of medical studies.

Plaintiff returned to the American medical system through internship employment at the University of Arizona and Dartmouth-Hitchcock Medical center, in 2010 and 2011, respectively. During both instances, Plaintiff believes he was singled out and abused for past controversies, and falsely told his medical knowledge and skills were unacceptable, when in fact, they ranked amongst the best nationally. Plaintiff finally suffered a breakdown, after two years of false criticisms. Plaintiff alleges that throughout the course of his employment as a resident physician, Arizona and Dartmouth knew about his 2006 ADA litigation and chose to constructively terminate him, apparently taking amusement in deriding Plaintiff's peculiar abilities as a *pro se* plaintiff and top ranked medical student with unusual prior adversity.

The defendants have covered up all evidence they knew about the 2006 litigation prior to January 2012. There are currently circuit appeals pending for evidence spoliation sanctions. Five key witnesses have stated "I don't recall" approximately one hundred times in depositions. If the Plaintiff can show that Defendants knew about the California litigation during the 2010-2011 timeframe, then guilt of fraud and perjury would almost certainly be proven beyond a reasonable doubt. Moreover, a large amount of emails were admittedly destroyed by Dartmouth; again, if Dartmouth's knowledge of the California litigation can be proven, the 'disappeared' emails would likely amount to federal obstruction of justice charges. The Plaintiff has noticed the FBI of these concerns, but it is believed the FBI has deferred investigation to the civil lawsuit.

Several months ago, Plaintiff learned that the PACER Service Center in San Antonio maintains records, for at least three years, of all 'accessions' to lawsuit docket searches conducted on PACER. As it turns out, PACER holds evidence either implicating or exonerating the Defendants of various civil and criminal allegations made by the Plaintiff.

As the Defendants abused the Plaintiff during 2010-2011 based on their knowledge of the 2006 litigation, almost certainly the Defendants would have accessed the original 2006 PACER records prior to January 2012. Indeed, Defendants have admitted that they learned about the 2006 litigation through lawsuit searches. Moreover, the PACER records will help the Court, jury, and Plaintiff's doctors establish whether or not Plaintiff's ability to perform the duties of a resident physician was restricted by his head injury, or by the prejudices of his supervisors, based on their prior knowledge of his ADA litigation.

Interestingly, Plaintiff offered to PACER Designated Official to merely produce a "yes/no" response to whether his lawsuit was accessed by any educational institution in the years 2010-2011. PACER initially agreed to produce a "yes/no" limited response, but then withdrew this possibility. Plaintiff asserts that for some reason, PACER does not

want to produce evidence that would allow a *pro se* plaintiff to prove the alleged fraud committed by two major academic medical centers. The Federal Judicial Branch's own policies do not allow PACER to 'take sides' and withhold such critical evidence.

In sum, Plaintiff asserts there is an ethical (and procedural) obligation of this Court to enforce the production of easily obtainable records, which in all probability will lead to discovery of 'what happened' to Plaintiff during his work as a resident physician that caused a serious medical breakdown. At a minimum, PACER should be ordered to produce the "yes/no" response concerning the record accessions in 2010-2011. No privilege exists to refuse such a minimal request.

## II. Argument

1) *General*

Pursuant to Rule 26(b) "parties may obtain discovery regarding any matter, not privileged, that is relevant to the claim or defense of any party." *Barbara Wood v. Bista Manor Nursing Center Life Generations Healthcare, Inc,* (2007 US Dist Lexis 22643 at 3). "Relevancy for purposes of discovery, is broadly defined, although it is not without ultimate and necessary boundaries." *Alberto Gonzaled v. Google Inc* 234 F.R.D. 674. Information sought by subpoena, as with any discovery request, must be reasonably calculated to lead to admissible evidence. In this instance, the PACER data is likely to provide evidence, either proving or disproving, certain claims made by the Plaintiff. Because this Court's connection with this case is ancillary to an action in another district, this Court "should be especially hesitant to pass judgment on what constitutes relevant evidence thereunder. Where relevance is in doubt, it should be permissive." *Id.* at 681.

2) *No timely Motion to Quash was filed nor was any valid privilege cited*

The Administrative Office of the U.S. Courts assigned a determining officer to review the subpoena issued by this Court. The subpoena had a production deadline of October 21

JDIsaacs v. DHMC
Case No. 12-CV-40-JL

2013. On November 11, 2013, the determining officer issued a letter to the Plaintiff objecting to the production. The determining officer cited PACER's "Privacy and Security Notice" and the Federal Judiciary's "Disclosure Regulations" as reasons not to comply with the subpoena. On these grounds alone, the subpoena should be granted because 1) a timely motion to quash was never filed, and 2) the Privacy/Disclosure polices of the Federal Judiciary do not constitute an absolute privilege from litigation discovery and/or subpoena production, nor do they override the FRCP in any way whatsoever.

3) P*roduction of the PACER records is cost-effective for the Federal Judiciary*

Two lawsuits are now focused on ascertaining evidence of what appears to be fraud and conspiracy between the various defendants. Plaintiff has requested the FBI investigate this matter. Ten depositions have already been scheduled, and two jury trials are likely since there is a genuine issue of fact to be determined. In the two depositions that have already taken place, key witnesses seem to have 'forgotten' most anything related to this case. An entire hospital system email account disappeared, which is now the subject of a Motion for Sanctions, which in itself is likely to exhaust all grounds for appeals given the nature of this litigation.

In short, the PACER data can easily establish critical facts and timelines which may significantly decrease the burden of related litigation on the courts limited resources. It is unclear why the Federal Judiciary, possessing critical evidence, would not want to produce that evidence to simplify ongoing litigation and conserve resources. The PACER data is, in fact meta-data used for billing purposes, and is in no way 'testimony' of judiciary personnel – nor is it asking the judiciary to 'take sides' on this matter (as Plaintiff has stated, the meta-data could either prove or disprove many of his claims).

4) *The PACER "Privacy Notice" does not override subpoenas or constitute absolute legal privilege*

The determining officer cited a PACER Privacy & Security notice, available in full at http://www.pacer.gov/privacy.html

The relevant portion of the privacy notice is:

> PACER staff will not give, sell or transfer any personal information to third parties, except in the following cases:
>
> -To secure payment of delinquent fees, identifying information may be transmitted to a collection agency.
>
> - If compelled by law.
>
> -If you direct us to do so.
>
> -In other legally limited circumstances (for example, to protect your account from fraud).

As is clear to PACER users, their privacy rights using PACER are subject to applicable laws ("If compelled by law."). A valid, legally issued subpoena has ordered the PACER records, and as such, they must be produced.

5) *The Privacy/Disclosure polices of the Federal Judiciary do not prescribe any relevant privilege in this matter.*

The determining officer states that the Disclosure Policies exempt PACER records from production, based upon the Judiciary's goal to "minimize its involvement in matters unrelated to it's mission."

In this case, the records sought are effectively 'crime-scene' evidence pertaining to a alleged retaliation, conspiracy, and fraud against a *pro se* ADA lawsuit. There simply is no feasible argument that the Federal Judiciary's mission is any way hindered by production of the PACER records. To the contrary, it is likely the Federal Judiciary is in possession of the last remaining physical evidence of civil and criminal violations against the Plaintiff.

1  For the reasons cited above, this Honorable Court should enforce the subpoena and order
2  production of the PACER records. No separate memorandum of law is necessary for this
3  motion, other that the aforementioned arguments.

5  Respectfully submitted, this 31st day of December, 2013.

           *(signature)*

10  J. D. ISAACS
11  3553 West Chester Pike Unit 177
12  Newtown Square, PA 19073

14  Plaintiff, *pro se*

# CERTIFICATE OF SERVICE

I, J.D. Isaacs, do declare as follows:

I certify that a copy of the foregoing **NOTICE OF MOTION AND MOTION TO ENFORCE SUBPOENA DUCES TECUM** was delivered via USPS and email to PACER & electronically to counsel for the Defendants with counsel.

Executed on this 31st day of December, 2013.

_____
J. D. ISAACS

Plaintiff, *pro se*

JDIsaacs v. DHMC
Case No. 12-CV-40-JL