J.D. Isaacs
3553 West Chester Pike Unit #177
Newtown Square, PA 19073
Telephone: (212) 257-0737
Email: jdi@alum.dartmouth.org

FILED
APR 1 6 2014
CLERK, U.S. DISTRICT COURT
WESTERN DISTRICT OF TEXAS
BY _____
DEPUTY CLERK

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF WESTERN TEXAS

| | |
|---|---|
| J. D. ISAACS<br><br>  Plaintiff, *pro se*,<br><br>  -V-<br><br>DARTMOUTH HITCHCOCK MEDICAL CENTER;<br>DOCTOR CHRISTINE FINN;<br>MARY HITCHCOCK MEMORIAL HOSPITAL;<br>TRUSTEES OF DARTMOUTH COLLEGE;<br><br>and JOHN DOE,<br><br>  Defendants. | Case No. 14-mc-0012-XR<br><br>**REPLY TO<br>MOTION TO ENFORCE<br>SUBPOENA DUCES TECUM** |

## PLAINTIFF'S REPLY TO MOTION TO ENFORCE SUBPOENA DUCES TECUM

This reply addresses concerns raised by the Administrative Office of the U.S. Courts' PACER Service Center, as filed by the U.S. Attorney for the Western District of Texas in response to Plaintiff's motion for subpoena enforcement.

### Correspondence with the AOUSC Substantially Complied with *Touhy* Regulations

Although not formally captioned as a *Touhy* request, the Plaintiff attempted on multiple occasions to engage in dialogue with the AOUSC about the relevance of the subpoena records. Prior to filing this motion, Plaintiff sought to confer with the AOUSC for review of the subpoena via multiple emails. Plaintiff made several phone calls to Mr Sigmund Adams, the designated individual at the AOUSC. In the spirit of *Touhy,* he sent Mr. Adams a letter (Exhibit A) including a draft of this motion to enforce the subpoena, in hopes Mr. Adams would appreciate the relevance and avoid the need for judicial intervention. The letter specifically asked AOUSC to review the proposed motion **in order to confer** about the subpoena relevance:

> *"I am attaching a draft Motion to Enforce Subpoena, to be filed in San Antonio. I hope that after your review of the motion, you will reconsider whether or not to produce the records. I believe that these records may represent some of the last physical evidence of various civil and criminal allegations pending, and hence view them as critical evidence…*
>
> ***Again, the attached motion is only a draft intended to confer with you for your review."***

The *Touhy* request can be an evolving process in which the original written request is supplemented and modified during the course of discussions and communications with the agency. (*U.S. v. Guild*, 2008 WL 169355 (E.D. Va. 2008); *In re PE Corporation Securities Litigation*, 2005 WL 806719 (D. Conn.). In fact, it is a good practice to try and meet each of the agency's objections through the use of supplemental written *Touhy* requests, so the record

that arrives at the court contains sufficient facts to support the request. *Westchester General Hospital, Inc.*, 770 F. Supp. 2d 1286; *In re PE Corp. Securities Litigation,* 2005 WL 806719 (D. Conn.). In the matter at hand, Plaintiff made diligent efforts to communicate with the AOUSC. Immediately upon filing the motion, Plaintiff again asked the AOUSC to consider his letters (Exhibit B) :

> *"Please let me know if you are able to make the negative declaration and avoid further work for the Courts[i.e retract the motion]."*

Next, Plaintiff inquired with the AOUSC on January 23, 2014 to see if they would be responding to the Motion to Enforce (Exhibit C), or if they might reconsider and confer with the Plaintiff:

> *"About a month ago I filed a motion to enforce the PACER subpoena, and sent you a copy. I have not yet been served with any response. Please let me know if you plan to respond[to the motion], or if I should file a motion for default, or if you have reconsidered to produce the PACER records."*

As the Court is aware, the AOUSC did not respond to the motion, nor did the AOUSC ever file a timely motion to quash the original subpoena. In short, the AOUSC ignored Plaintiff's attempts spanning five months to confer on the matter, and now incorrectly assert that the Plaintiff did not comply with the *Touhy* regulations.

Finally, the Plaintiff has today sent the US Attorney a further outline addressing the relevance of the PACER data (Exhibit D) to both civil and criminal claims filed with the U.S. Department of Justice.

<u>A recent academic review cites *Touhy* as "fiction" in Federal litigation</u>

A well cited recent summary of *Touhy* is found in *Georgetown Law Review* "Taking Touhy Too Far" (2011 Vol.99:1227):

> "Although some agencies continue to invoke an amorphous 'housekeeping privilege' to resist disclosing subpoenaed records, the vast majority of courts and commentators that have addressed the issue recognize that the housekeeping privilege is a fiction." citing *Hous. Bus. Journal, Inc. v. Office of the Comptroller of the*

JDIsaacs v. DHMC
Case No. 14-mc-0012-XR

*Currency*, U.S. Dep't of Treasury, 86 F.3d 1208, 1212 (D.C. Cir. 1996) ("[N]either the Federal Housekeeping Statute nor the *Touhy* decision authorizes a federal agency to withhold documents from a federal court."); *In re Bankers Trust Co.*, 61 F.3d 465, 470 (6th Cir. 1995) ("Section 301 . . . is nothing more than a general housekeeping statute and does not provide 'substantive' rules regulating disclosure of government information." (quoting *Exxon Shipping Co. v. U.S. Dep't of Interior*, 34 F.3d 774, 777 (9th Cir. 1994)));Exxon, 34 F.3d at 778 & n.6 ("[N]either the [housekeeping] statute's text, its legislative history, nor Supreme Court case law supports the government's argument that [the statute] authorizes agency heads to withhold documents or testimony from federal courts.... Every commentator we are aware of who has addressed the issue has reached the same conclusion."); *In re Motion to Compel Compliance with Subpoena Direct to Dep't of Veterans Affairs*, 257 F.R.D. 12, 15 (D.D.C. 2009) (noting that *Touhy* regulations do not "confer a separate privilege upon the government, nor create a legal basis to withhold information pursuant to a federal subpoena"); Coleman, supra note 25, at 688–89 & n.21("The proposition for which *Touhy* is often cited—that a government agency may withhold documents or testimony at its discretion—simply is not good law and hasn't been since 1958." (citing *Comm. For Nuclear Responsibility, Inc. v. Seaborg*, 463 F.2d 788, 792 (D.C. Cir. 1971) ("In our view, this claim of absolute immunity for documents in possession of an executive department or agency, upon the bald assertion of its head, is not sound law."))).

The matter at hand includes claims of federal retaliation, fraud, and subversion of process (see Exhibit D). Substantial damages to Plaintiff's health and career must be weighed against any decision to withhold important discovery material. As such, stretching *Touhy* to apply to this case seems to counter the vast majority of case law, as the Federal Rules of Civil Procedure (Rule 45) directly allows this Court to determine the substantive relevancy of the evidence pertaining to federal claims.

### *Touhy's* Role for Resource Allocation and Cost Saving

*Touhy's* implementations largely serve as measures to centralize and limit the resources the federal government expends on private litigation. In this case, two years of exhaustive litigation, now involving four federal courts, may be resolved by producing the easily retrievable PACER meta-data. In fact, the PACER data has already been retrieved by Mr. Ralph Gutierrez (see Exhibit D). If a cost-analysis were to be performed, it is hard to imagine any cost-justification against producing the readily available PACER data, which are critical to Plaintiff's case (See, again, Exhibit D). In fact, a jury trial (and/or appeals) may be averted by resolving any question of fact as to how and when Dartmouth learned about the 2006 litigation.

### Even under the APA standard, the AOUSC response appears somewhat arbitrary

An agency's rejection of a *Touhy* request will be considered arbitrary and capricious if it is merely a pro forma conclusory denial. *In re PE Corp. Securities Litigation*, 2005 WL 806719 (D. Conn.). More is required from federal agencies. They "must examine the relevant data and articulate a satisfactory explanation for [their] action including a rational connection between the facts found and the choice made." *In re Vioxx Products Liability Litigation*, 235 F.R.D. 334, 346 (E.D. Lou. 2005). "Likewise, an agency's action will also be considered arbitrary and capricious when it … entirely failed to consider an important aspect of the problem. " *U.S. v. Walker*, 2009 WL 2611522 (M.D. Ga. 2009) (overturning agency denial of *Touhy* request) quoting *Miccosukee Tribe of Indians of Florida* v. U.S., 566 F.3d at 1257, 1264 (11th Cir. 2009).

In this case, Plaintiff offered the agency numerous occasions to discuss the relevance of the records sought. Likewise, Plaintiff declares that he made every possible effort to obtain discovery through other non-federal sources before PACER, but all have been unsuccessful or blocked by *nine* law firms representing the defendants. Plaintiff has been willing to make available to the AOUSC nearly forty hours of depositions (conducted *pro se)* and some ten-thousand pages of evidence. The agency failed to examine, even superficially, the discovery materials. Likewise, the agency failed to respond at all to Plaintiff's *Touhy* follow ups – on

JDIsaacs v. DHMC
Case No. 14-mc-0012-XR

three occasions, spanning five months. The agency provided no explanation for denial, other than boilerplate regulations. Moreover, the agency did not proffer a single claim for privilege, which it cannot do in good faith. In fact, there is no privilege that exists for the PACER meta-data. The data are merely time-stamps and corresponding account name identifiers. Routine subpoenas executed every day in the judiciary system reveal far more sensitive information than the PACER meta-data that. No privileged communications, opinions of judiciary employees, or personal testimony is sought; merely a time-data-name log of the $0.10 charges levied by PACER by those who viewed Plaintiff's 2006 lawsuit.

Conclusion and Assent to *In Camera* inspection

For the aforementioned reasons, Plaintiff believes that *Touhy* has been substantially complied with in seeking the PACER billing meta-data. Moreover, the majority of case law and congressional and academic commentary suggest that *Touhy* does not dismantle the Federal Rules of Civil Procedure, which required PACER's subpoena compliance.

The AOUSC, via the U.S. Attorney's office, has offered an *In Camera* inspection subject to any protective order this Court deems necessary. The Plaintiff is agreeable to such compromise, and submits that several minutes inspection is likely to substantially reduce the overall resources the judiciary expends on the pending case. Furthermore, inspection of the PACER data promotes truth and fairness, and sets a precedent that might potentially avoid a retaliation like what Plaintiff experienced from ever occurring again.

Respectfully submitted, this 16th day of April, 2014.

*[signature: Jeffrey D. Isaacs]*

Dr J. D. ISAACS (Plaintiff, *pro se)*
3553 West Chester Pike Unit 177
Newtown Square, PA 19073

# CERTIFICATE OF SERVICE

I, J.D. Isaacs, do declare as follows:

I certify that a copy of the foregoing **REPLY TO MOTION TO ENFORCE SUBPOENA DUCES TECUM** was delivered via email and USPS to PACER/US Attorney counsel, and to counsel for the Defendants.

Executed on this 16th day of April, 2014.

*/s/ Jeffrey D. Isaacs*

J. D. ISAACS

Plaintiff, *pro se*