# EXHIBIT D

Dear US Attorney Paniszczyn:

This letter pertains to civil matter 14-mc-12-XR and related reports I have previously lodged with my local FBI field office in Fort Washington, Pennsylvania. I write you to explain my belief that your office is in possession of PACER meta-data evidence that proves various federal civil and criminal claims.

This case goes well beyond a 'wrongful termination' claim and involves direct federal matters, not limited to the following:

    1) my medical career and my own well-being were sabotaged in retaliation for filing a federal disability lawsuit eight years ago.

    2) the federal government (via Medicare) reimburses hospitals approximately $300,000 for the training of each resident physician. If my training was terminated for fraudulent and/or retaliatory reasons, Medicare has lost a substantial investment in my graduate medical education. (I have reported this matter to the Office of Inspector General as well).

    3) likewise, the federal government Stafford loan scheme subsidized approximately $250,000 in tuition fees and loans for my M.D. degree. Unable to practice medicine, the federal government will likely lose these funds, unless I am able to prove my claims and resume my federally-funded residency position.

    4) at least eight witnesses perjured themselves in federal depositions, and intentionally destroyed relevant ESI discovery materials, in order to subvert justice and discredit my claims.

    5) hospital due-process termination policies were violated to discredit a federal litigation plaintiff, prior to a federal political appointment (World Bank nomination of Jim Yong Kim).

    6) this lawsuit itself has grown unnecessarily complex as a result of the alleged cover-up, and incurs substantial resource utilization of the Department of Justice. The case is currently in four federal courts, and declaratory judgment of the aforementioned destruction of ESI is pending application for a Writ of Certiorari. It is believed production of the PACER data would immediately end most, if not all, litigation by resolving the primary questions of fact.

My family and I raised the above issues with the FBI in July 2013, and was told that the matter was being referred to the Boston US Attorney's office for review of jurisdiction. At that time, I was unaware of the existence of the PACER data which are now subject to subpoena review. When I spoke by telephone with the PACER manager (Mr. Ralph Gutierrez) in San Antonio in October 2013, I was informed that responsive records exist for the subpoena, and that these records are being carefully preserved pending judicial review.

Below I summarize the various allegations I have made previously in federal court and to the FBI, with the hope that your office can piece together my allegations, in conjunction with the PACER meta-data in your possession, and resolve the claims one way or the other. This case has grown in complexity over the years and taken on a life of it's own. My hunch is that the PACER information may drastically simplify the matter and minimize resources the Department of Justice allocates to this case.

Generally, as set forth in the motion pleadings, I allege that a 2006 federal lawsuit motivated certain individuals to abuse me and retaliate against me. This resulted in the loss of my medical career and serious health impairments. Essentially, I was driven to the point of incapacitation while working nine months as a hospital intern, and have now spent two years in court trying to understand what happened.

I understand PACER's reluctance to be involved, but contrary to your suggestion in the filing dated April 14th (yesterday), I believe that I have already exhausted other discovery possibilities. As a *pro se* litigant, I face nine law firms that have blocked nearly every effort I have made to obtain justice. I believe PACER holds the last "smoking gun." Eight depositions have yielded witnesses that "don't recall" any relevant details. Entire email accounts have been spoliated, with no explanation given as to their disappearance. Witnesses were instructed by their lawyers not to disclose mobile phone numbers or email addresses that would allow for other avenues of e-discovery. As such, I have substantiated reason to believe the defendants, for two years, have obstructed justice by destroying evidence, perjuring themselves, and intimidating witnesses.

I noticed Dartmouth's president Jim Yong Kim of this lawsuit on January 14th 2012. In that letter, pursuant to FRCP 34 I requested that all email records relevant to my employment be preserved. It is now known that on January 17th, 2012, all these email records disappeared. I believe this was done maliciously and out of spite, in further retaliation for my *pro se* status. Additionally, my own medical records at Dartmouth, detailing my worsening medical condition, disappeared that day. It seems straightforward to me that a cover up commenced at that point.

In March 2012, I accused Jim Yong Kim of negligence in failing to address the procedural and criminal complaints I made to his office. His own hospital diagnosed me with mental shock, and I felt he had a duty to investigate my claims. Shortly thereafter, I was terminated from my position as a resident physician without any due process, hearing, or administrative leave required under Dartmouth's hospital bylaws. Subsequently, in late March, I employed a process-server to serve a summons to Kim. The process server was told by Kim's assistant that Kim was not at his residence. The process server testified that he believes Kim was in fact home and was evading the summons.

That same day, Kim was nominated to be President of the World Bank. I believe I was terminated, without due process, in part to discredit my claims against a federal appointee.

The link between my 2006 litigation and the 2013 retaliation at Dartmouth has been most

difficult to ascertain through discovery, especially considering the email records about my employment were deleted. However, it is known that a link exists, because Dartmouth's termination letter dated March 19th 2012 specifically ended my employment for reasons related to the 2006 litigation. However, discovery has not produced a single piece of evidence explaining how, when, or why Dartmouth learned of the 2006 litigation. The only statement Dartmouth made is that their attorney, one Edward Kaplan, first learned of the matter *after* January 15th 2012.

During the aforementioned depositions, all deponents testified that they did not learn about the 2006 litigation until late January 2012, which I believe is simply implausible. I believe the deponents are covering for someone, as they do not want to reveal how and when Dartmouth learned about the 2006 litigation. This matter has been the subject of roughly forty hours of depositions. I am willing to provide the depositions to your office to assist in your understanding of how the entire discovery thus far revolves around when Dartmouth learned of the litigation. *Essentially, if your PACER records show access to the 2006 litigation prior to January 15th 2012, then you have evidence that Dartmouth's witnesses are subverting justice in the federal court system and effectively abusing a pro se litigant.*

Moreover, I offered to dismiss civil claims against Jim Yong Kim if he could provide an affidavit that he did not have any relations or communications with the defendant from 2006, a colleague of his in international health at the NIH. Kim's attorneys declined the offer to drop civil charges in exchange for the requested affidavit. The PACER data, if it indeed shows accession to the 2006 litigation prior to January 2012, will reasonably easily allow me to identify the individuals who 'transmitted' knowledge and defrauded me. I simply cannot know their identities without the PACER data.

This letter is being forwarded to the criminal division of your office as I understand your role may be limited to the pending civil motion. Under *Touhy*, the disclosure process is meant to be ongoing, and I have made efforts to engage in dialogue with Mr. Sigmund Adams for the past six months. Now that I have provided you with more specific information, I hope you will reconsider production of the PACER documents. Likewise, I agree to your offer to *in camera* inspection of the records. I believe such an inspection would resolve my claims within a matter of minutes, saving the Justice Department considerable time and expense.


Sincerely,

Jeffrey Isaacs